**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| JESSE MILESKI, | ) | CASE NO:   5:08-cv-1506 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |


Plaintiff, Jesse Mileski, challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying Mileski's applications for a

period of Disability Insurance Benefits ("DIB") under Title II Of the Social Security Act,

42 U.S.C. § 416 (i), and for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States

Magistrate Judge pursuant to the consent of the parties entered under the authority of

28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is

AFFIRMED.

1

## I.  Procedural History

Mileski filed his current applications for DIB and SSI on September 22, 2003 alleging disability due to mental impairment. His applications were denied initially and upon reconsideration.  Mileski timely requested an administrative hearing.

Administrative Law Judge Peter R. Bronson ("ALJ") held a hearing on November 16, 2006, at which Mileski, who was represented by counsel, Kathleen L. Reis, vocational expert ("VE"), and Daniel E. Schweid, M.D., medical expert ("ME"), testified. The ALJ issued a decision on March 21, 2007 in which he determined that Mileski was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Mileski filed an appeal to this Court.

On appeal, Mileski claims that:  (1) The ALJ failed to give proper weight to the opinion of Mileski's treating physician; and (2) Mileski has provided new and material evidence that warrants remand.  The Commissioner disputes these claims.

## II.  Evidence

### A.      Personal and Vocational Evidence

Mileski was born on March 3, 1980, and was 26 years old at the time of the hearing.  Transcript p. 48 ("Tr." 48) Mileski obtained a GED, and has past relevant work experience as a fast food worker, busser, landscape laborer, auto parts counter clerk, seafood cook, grocery bagger, and kitchen helper.  (Tr. 184-190, 668-669)

### B.      Medical Evidence

O November 5, 2000, Mileski was involuntarily hospitalized due to bizarre behavior and mood changes.  (Tr. 235) A history of polysubstance abuse was noted, all

2

other diagnosis were deferred, and Mileski was assigned a Global Assessment Functioning ("GAF") score of 40.[1] (Tr. 236) Mileski was discharged on November 9, 2000. At the time of his discharge, he was diagnosed with psychotic disorder, NOS and assigned a GAF score of 75.[2] Mileski was advised to seek outpatient mental health counseling. (Tr. 241)

Mileski presented to Southeastern Center for Mental Health on November 21, 2000. Lee W. Porter, ANP-C diagnosed Mileski with psychosis NOS; rule out primary schizophrenic process, versus bipolar disorder, versus drug induced psychosis. Porter referred Mileski to Yusuke Sagawa, M.D. for a full psychiatric evaluation. (Tr. 297)

Mileski presented to Dr. Sagawa, on December 19, 2000. Dr. Sagawa diagnosed Mileski with bipolar disorder, NOS with current manic/hypomanic features; rule out schizoaffective disorder or schizophrenia. (Tr. 284)

Mileski was again involuntarily hospitalized from January 10, 2001 to January 23, 2001. At the time of his admission, Mileski had a GAF score of 35. He received zyprexa, haldol, and cogentin in the hospital. When discharged, his diagnosis was

---

[1] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. A person who scores in this range may have illogical or irrelevant speech, and may avoid friends, neglect family, and be unable to work. *See Diagnostic and Statistical Manual of Mental Disorders*, at 34. (American Psychiatric Association, 4th ed. revised, 2000).

[2] A GAF score between 71-80 indicates no more than slight impairment in social, occupational, or school functioning . If symptoms are present, they are transient and expect able reactions to psychosocial stressors. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34.

3

psychotic disorder NOS, and his GAF score was 80. (Tr. 221)

On March 7, 2001, Porter diagnosed Mileski with psychotic disorder, NOS, and cannabis use in partial remission. He assigned Mileski a GAF score of 50.[3] (Tr. 267)

On May 8, 2001, Frederick Leidal, Psy. D. performed a consultive psychological examination. (Tr. 503-508) Dr. Leidal diagnosed Mileski with bipolar I disorder, most recent episode manic; cannabis abuse; alcohol abuse; and hallucinogen abuse. (Tr. 507) Dr. Leidal opined that Mileski has below average ability to: (1) relate to others such as coworkers and supervisors; (2) work near others and not be distracted by them; (3) persist in completing routine daily tasks, work related tasks, and maintain pace; (4) understand and carry out more detailed instructions; and (5) obtain some kind of productive employment without assistance. Dr. Leidal opined that Mileski has below average to poor ability to: (1) understand, comprehend, and carry out more complex levels of instructions and directions; and (2) maintain employment, adapt to the work environment, tolerate stressors of the work environment, and complete a normal workday. Mileski's has fair ability to: (1) accept criticism and respond appropriately to a supervisor in a work setting; (2) respond to change and reasonable flexibility; (3) maintain attention to simple work related tasks; (4) recall and remember tasks; (5) carry out simple and repetitive tasks; and (6) sustain an ordinary routine without supervision, perform activities with a schedule, maintain attendance, and be punctual. Mileski's

---

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34.

4

ability to follow simple instructions and directions is good.  (Tr. 507-508)

Dr. Leidal opined that Mileski probably could work, and may need some type of further assistance or treatment to do so.  (Tr. 508)

On May 10, 2001, Mileski presented to Michael Bennetts, M.D. for psychiatric evaluation, and to obtain his medication.  (Tr. 326) Dr. Bennetts diagnosed Mileski with schizoaffective disorder, bipolar subtype, and marijuana dependence/ polysubstance abuse.  He assigned Mileski a GAF score of 50.  (Tr. 328) On June 18, 2001, Dr. Bennetts renewed  Mileski's diagnosis, and increased his GAF score to 55.[4]  (Tr. 323) On July 19, 2001, Dr. Bennetts again renewed Mileski's diagnosis, and decreased his GAF score to 50.  (Tr. 322)

On May 22, 2001, Clifford Charles, Ph. D completed a psychiatric review technique ("PRT").  (Tr. 303-316) Clifford identified Mileski as having an affective disorder, and a substance abuse disorder.  (Tr. 303) Clifford opined that these disorders resulted in moderate restrictions of activities of daily living; moderate difficulties in maintaining concentration, persistence, or pace; mild difficulties in maintaining social functioning; and one or two episodes of decompensation of an extended duration.  (Tr. 313)

Clifford also completed a residual functional capacity assessment ("RFCA") on May 22, 2001.  Among other things, Clifford reported the following.  Mileski is

---

[4] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders*, *supra,* at 34.

5

moderately limited in his ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (4) work in coordination with, or proximity to, others without being distracted by them; (5) complete a normal workday and workweek without interruptions form psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in work setting; and (9) set realistic goals or make plans independently of others.  Mileski is markedly limited in his  ability to carry out detailed instructions.  (Tr. 317-318)

Mileski presented to Brian Welsh, M.D. on September 5, 2002 for a medication follow-up.  Welsh diagnosed Mileski with polysubstance dependence, and a history of schizoaffective disorder, rule out bipolar disorder and substance induced mood disorder.  He assigned Mileski a GAF score of 60.  (Tr. 385) On September 19, 2002, Dr. Welsh renewed the diagnosis of polysubstance abuse, and added a diagnosis of bipolar disorder. He also renewed the rule out diagnosis of substance induced mood disorder, and  the GAF score of 60.  (Tr. 383)  On October 4, 2002, Welsh renewed all diagnosis, and increased Mileski's GAF to 65.[5]  At this time, Mileski reported working

---

[5] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.  A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships.  *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34

eight hour days on a construction site.  (Tr. 381) On November 6, 2002, Dr. Welsh diagnosed Mileski with bipolar disorder, currently in a hypomanic state and opiate dependence.  He renewed the rule out diagnosis of substance abuse induced mood disorder.  He also renewed Mileski's GAF score of 65.  (Tr. 379)  On January 3, 2003, Dr. Walsh renewed his prior diagnosis, except the finding that the bipolar disorder is currently in a hypomanic state.  He decreased Mileski's GAF score to 62.  Mileski reported that he was working approximately 25 hours a week at Taco Bell.  (Tr. 376) On February 7, 2003, Dr. Welsh diagnosed Mileski with bipolar disorder, type I, currently manic, and renewed the other previous diagnosis.  He decreased Mileski's GAF score to 55/60.  Mileski reported that he was working at Taco Bell approximately 35 hours a week.  (Tr. 374)

On January 13, 2003, Patricia S. Semmelman, Ph. D. completed a PRT and RFCA.  (342-358) Dr. Semmelman reported that Mileski had an affective disorder and a substance abuse disorder that resulted in mild restrictions of activities of daily living; maintaining concentration, persistence, and pace; and moderate difficulties in maintaining social functioning.  Dr. Semmelman did not report any episodes of decompensation.  (Tr. 342, 352)

The RFCA indicates that Mileski is moderately limited in his ability to: (1) complete a normal workday and workweek without interruptions form psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; (2) accept instruction and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) respond appropriately to changes in the work

7

setting.  (Tr. 357)

On September 14, 2003  Mileski was admitted to the hospital on an emergency basis after he became religiously preoccupied and volatile.  His admitting diagnosis was bipolar I disorder with psychotic features; rule out schizoaffective disorder; ADHD by history; and polysubstance abuse in partial remission.  He was assigned a GAF score of 40-50.  (Tr. 363)  Mileski was discharged on September 19, 2003.  At that time, his diagnosis was bipolar I disorder with psychotic features, most recent episode manic; history of opiate dependence; and history of ADHD.  His GAF score was 65.  (Tr. 365)

On October 30, 2003, Dr. Welsh saw Mileski for a post-hospitalization follow-up. Mileski denied audio or visual hallucinations, but stated that he hears laughter inside his head.  Dr. Welsh diagnosed Mileski with bipolar disorder, type I, most recent manic with psychotic symptoms; opiate dependence in early remission; rule out substance induced mood disorder.  He assigned Mileski a GAF score of 60.  (Tr. 372-373)

On November 6, 2003, Gary Sipps, Ph D. performed a consultive psychological evaluation.  Dr. Sipps opined in part that Mileski's ability to concentrate and attend to tasks  appears to be adequate; his capacity for sustained concentration and persistence appears to be low average; and his ability to direct his attention effectively to tasks at hand for a reasonable period of time appears to be mildly impaired.  (Tr. 393-393) Dr. Sipps diagnosed Mileski with  psychotic disorder NOS in partial remission with treatment, and polysubstance dependence in reported remission.  Dr Sipps assigned Mileski a GAF score of 56 with current abstinence from substance abuse and maintenance of current therapeutic regime.  (Tr. 394)

8

On December 16, 2003, Vicky McCreary, Ph D. completed a PRT and an RFCA which were reviewed by Donna E. Winter, Ph. D.  Dr. McCreary opined that Mileski has an affective disorder, and a substance addiction disorder resulting in mild restriction of activities of daily living; mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation of extended duration.  (Tr. 396, 406) Dr. McCreary opined that although Mileski has had three hospitalizations, he recovers quickly when he is hospitalized, and his medication is adjusted and/or monitored.  (Tr. 408)

Dr. McCreary opined that Mileski is moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instruction and respond appropriately to criticism form supervisors; (6) get along with coworker or peers without distracting them or exhibiting behavioral extremes; (7) respond appropriately to changes in the work setting; and (8) set realistic goals or make plans independently of others.  Dr. McCreary further opined that Mileski does not have any marked limitations.  (Tr. 409-410) Dr. McCreary assigned Mileski a GAF score of 60. (Tr. 411)

Dr. Welsh saw Mileski on December 23, 2003.  At that time, he diagnosed Mileski with bipolar disorder type I, most recent episode manic with psychotic symptoms, now resolved; opiate dependence, intermittent; and rule out substance induced mood disorder.  He assigned Mileski a GAF score of 68.  (Tr. 413)

9

On June 21, 2004, Dr. Welsh opined that Mileski's bipolar disorder was in remission, and his opiated dependence was reported to be in remission.  He assigned Mileski a GAF score of 68.  (Tr. 433)

On August 15, 2004, Dr. Welsh renewed his diagnosis of bipolar disorder I, in remission,  and added a diagnosis of opiate dependence in full remission.  He further added a rule out diagnosis of attention deficit hyperactivity disorder ("ADHD"), inattentive type.  He assigned Mileski a GAF score of 68.  (Tr. 431)

Dr. Welsh treated Mileski on July 12, 2005.  He opined that Mileski was doing much better.  He diagnosed him with bipolar disorder in remission; opiated dependence, recent relapse, early remission; polysubstance dependence, recent relapse, early remission; history of ADHD, inattentive type; and intermittent nicotine dependence.  He assigned Mileski a GAF score of 68. (Tr. 449-450)

On October 10, 2005, Dr. Welsh treated Mileski, and also completed a mental capacity assessment ("MCA").  Dr. Welsh renewed his July 12, 2005  diagnosis, however he now opined that Mileski's opiate and polysubstance dependence were in remission.  He assigned a GAF score of 65.  (Tr. 485) Dr. Welsh opined that Mileski has poor to no ability to: (1) maintain attention and concentration for extended periods of two hour segments; (2) function independently without special supervision; (3) work in coordination with or proximity to other without being unduly distracted or distracting; and (4) complete a normal workday or workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 480-481)

10

Mileski saw Dr. Welsh on June 23, 2006.  At that time, Mileski reported that he was doing well, he would like to find a job, and he was doing some side work with his father.  (Tr. 495).  Dr. Welsh diagnosed Mileski's bipolar disorder as stable, and his opiate and polysubstance dependence in current reported remission.  He assigned Mileski a GAF score of 68.  (Tr. 495)

Mileski suffered a substance abuse relapse in July 2006.  (Tr. 491)

Mileski was probated in December 2007 because he was a risk to himself and others.  (Tr. 530)  He was admitted to the hospital on December 18, 2007 due to psychosis and agitation.  (Tr. 539)  He was initially diagnosed with bipolar mania and medication noncompliance.  (Tr. 550) The following day he was diagnosed with psychotic disorder NOS; mood disorder NOS; rule out bipolar disorder; rule out schizophrenia, chronic paranoid type.  He was assigned a GAF score of 15.[6] (Tr. 554) Mileski was discharged on December 31, 2007.  At that time, he was diagnosed with bipolar disorder, most recent episode mania, and assigned a GAF score of approximately 45.  (Tr. 577)

### C.    Hearing testimony

Mileski testified he was diagnosed with bipolar disorder, and suffers from drug addiction, and attention deficit disorder.  (Tr. 621, 646) He had been clean and sober for approximately one month at the time of the hearing.  (Tr. 621) Mileski testified he lost his job with Ruby Tuesdays due to a confrontation with one of the managers.  (Tr.

---

[6] A GAF score between 11-20 indicates some danger of hurting self or others, or occasionally failing to maintain personal hygiene, or gross impairment in communications.  *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34

617-618)  He also lost a job a Taco Bell because of a confrontation with a manager.
(Tr. 618)  He lost his job at Auto Zone because he would stand on the counter
preaching  and shouting.  (Tr. 620)

The ME testified  Mileski's history of substance abuse would limit him from
working around unprotected heights, dangerous unprotected machinery, and driving a
motor vehicle for work.  (Tr. 634)  The ME further testified Miseski's RFC should include
the following. (1) only routine, low stress tasks; (2) no intense interpersonal aspects to
the tasks including, no confrontations, negotiations, arbitrations; (3) no requirement to
be responsible for the welfare or safety of others; (4) no high production or strict
production quotas; (5) only limited contact with the public, coworkers, and supervisors;
and (6) no high pressure supervision.  (Tr. 635- 636)

The ME testified Milseski's mental impairments existed independently of his
substance abuse disorder; and further testified that if Mileski were clean and sober, he
would have the same limitations, with the exception of the restrictions on heights,
machinery, and motor vehicles.  (Tr. 630, 639)

The ME testified Mileski's ability to complete a normal workday or workweek
depends upon the stress level of the job; and given the other restrictions, Mileski would
have a fair chance of completing a workday or workweek.  (Tr. 666)  He testified Mileski
would have trouble attending and concentrating for two hour segments, but he can
concentrate for less than that.  (Tr. 665)

The ALJ posed the following hypothetical to the VE.  A person who:  (1) could
not do any work that involves confrontations, negotiations, arbitrations, or other intense
interpersonal interactions with the public, coworkers, or supervisors; (2) who could not

work in tandem with coworkers or supervisors; (3) who could not be responsible for the health, safety, or welfare or others; (4) who could perform only routine, low stress work with no high or strict productions quotas, no assembly line work, and no piece rate work.  (Tr. 670) The VE testified that such a person could not perform Miseski's past relevant work, but could perform jobs that exist in the national economy including, vending attendant, mail room clerk, salvage laborer.  (Tr. 670, 674, 675)

The ALJ then asked the VE to assume the same limitations and add restrictions against working in proximity to unprotected heights and dangerous machinery, and against operating a motor vehicle as part of the job.  (Tr. 675) The VE testified that these additional restrictions did not change her response to the first hypothetical.  (Tr. 675)

Miseski's attorney asked the VE to consider a person with the same limitations, but to add the restriction that the person would lose focus for 30 seconds, ten times per hour.  (Tr. 681)  The VE testified that this limitation would not eliminate jobs.  (Tr. 681,683)

Miseski's attorney also asked the VE to consider the individual described, and to assume that the person could only occasionally complete a normal workday.  (Tr. 679) The VE testified that there would be no jobs for such a person.  (Tr. 679)

### I.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second,  the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1.      Mr. Mileski meets the insured status requirements of the Social Security Act through September 30, 2007.

14

2.      Mr. Mileski has not engaged in substantial gainful activity since November 2, 2000, the alleged onset date ....

3.      Mr. Mileski has the following severe impairments from November 2, 2000, the alleged onset date, through the date of this decision: Either schizoaffective disorder or bipolar disorder with psychotic features; Polysubstance abuse, recurrent.  Mr. Mileski has the following non-severe impairments:  Inguinal hernia. Cellulitis of the left upper arm.

4.      Based on all of his impairments, including the substance use impairment, Mr. Mileski does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in the Listing of Impairments....

5.      [B]ased on all of his impairments, including the substance abuse impairment, Mr. Mileski had and has the residual functional capacity to perform work activities except for the following limits on Mr. Miseski's ability to work:

        Mr. Mileski could not and can not :

        (1)     do any work in proximity to unprotected heights or dangerous machinery:
        (2)     operate a motor vehicle as part of a job;
        (3)     do any work that requires confrontation, negotiation, arbitration, or other intense interpersonal interaction with the public, with coworkers, or with supervisors;
        (4)     do any work that requires more than limited contact with the public, with coworkers, or with supervisors;
        (5)     do any work that requires being responsible for the health, safety, or welfare of other people;
        (6)     do any assembly line work, piece rate work, or any other work that includes high or strict production quotas.

        Mr Mileski could and can do only routine, low stress work.

6.      Mr. Mileski is unable to perform any past relevant work....

                ***

8.      At all times from November 2, 2000, the alleged onset date, through the date of this decision, Mr. Mileski was and is a younger individual age 18-44....

9.      Mr. Mileski has at least a high school education and is able to

15

communicate in English.... His education did not provide for direct entry into skilled work.

10. Mr. Mileski's acquired job skills do not transfer to other occupations that can be performed by an individual whose residual functional capacity is as stated in Finding # 5 above....

11. Based on all of Mr. Miseski's impairments, including the substance abuse impairment, and taking into considering [sic] Mr. Miseski's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Mileski can perform....

12. Based on all of Mr. Miseski's impairments, including the substance abuse impairment, Mr. Mileski has not been under a "disability" as defined in the Social Security Act, from November 2, 2000, the alleged onset date, through the date of this decision....

(Tr. 21-34)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See* *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also* *Richardson v. Perales*, 402 U.S. 389 (1971).

16

## VI.  Analysis

Mileski alleges the ALJ erred by failing to accord proper weight to the opinion of his treating physician. He also alleges that he has provided new and material evidence that warrants remand.  The Commissioner disputes these allegations.

### A.    Treatment of Medical Opinions

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983).  Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711-12 (6th Cir. 1988).  Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard the treating physician's opinion.  *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).  The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight.  *Shelman v. Heckler,* 821 F.2d 316 (6th Cir. 1987).

17

Even when a treating physician's opinion is found not to be entitled to controlling

weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion
> is not well-supported by medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial evidence in the case
> record means only that the opinion is not entitled to "controlling weight," not that
> the opinion should be rejected.  Treating source medical opinions are still entitled
> to deference and must be weighed using all of the factors provided in 20 CFR
> 404.1527 and 416.927.  In many cases, a treating source's medical opinion will
> be entitled to the greatest weight and should be adopted, even if it does not meet
> the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled

to controlling weight, he is required to articulate good reasons for the weight given to

the treating source's medical opinion.  20 C.F.R. §§ 404.1527(d) (2) and 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating
> source's medical opinion, supported by evidence in the case record, and must be
> sufficiently specific to make clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the reasons for that
> weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

Mileski argues the ALJ improperly rejected Dr. Welsh's opinion that Mileski has

poor or no ability to complete a normal workday and workweek.[7] Mileski argues the

ALJ's decision is erroneous because it is based on the ALJ's misconception that Dr.

Welsh identified limitations based on  Mileski's condition as it actually was, not how it

would be if Mr. Mileski were clean and sober.  He further argues the ALJ found that Dr.

Welsh's limitations must be rejected since he did not separate out the impact of

---

[7] The ALJ also rejected other portions of Dr. Welsh's opinion, but only this
portion affects the outcome of Mileski's claim.

18

plaintiff's use of drugs and alcohol.  Both of these arguments misconstrue the ALJ's opinion.[8]

The ALJ stated that he gave no weight to Dr. Welsh's opinion that Mileski has poor or no ability to maintain attention and concentration for two hour segments, function independently without special supervision, and complete a normal workday and workweek because those opinions are inconsistent  with, or contradict Dr. Welsh's treatment notes.  He further stated that he did give weight to Dr. Welsh's other opinions, and incorporated them into the RFC, because those opinions are consistent with the weight of the evidence.  Thus, contrary to Mileski's argument, the ALJ did not reject Dr. Welsh's opinion because of any misconception about the opinion; rather, he rejected it because it was contradicted by other evidence.  (Tr. 25)  The ALJ may reject a treating physician's opinion if he finds that it is inconsistent with, or contrary to other evidence in the record, provided his finding is supported by substantial evidence.  In this  case, there is substantial evidence to support the ALJ's finding.

Dr. Welsh saw Mileski six times between August 25, 2004 and October 10, 2005, when Dr. Welsh completed the mental capacity assessment ("MCA") at issue.  The treatment notes from each of these visits indicate that Mileski's bipolar disorder is in remission; and on each of these visits, Dr. Welsh assigned Mileski a GAF score

_____

[8]The ALJ found, based on Dr. Schweid's testimony, that it is possible to separate the effects of Mileski's polysubstance abuse from his mental impairments. He also found that Mileski's RFC would be the same if he were clean and sober, with the exception of the restrictions dealing with heights, machinery, and motor vehicles.  Therefore, it is unclear why Mileski raises this argument, or how Mileski's argument advances his cause.

19

between 65 and 68.  (Tr. 449-486)  A GAF score between 61 and 70 indicates some mild symptoms, or some mild difficulty in social, occupational, or school functioning; but a person who scores in this range is generally functioning pretty well.  *See infra* p.6, n.5

On October 10, 2005, the day Dr. Welsh completed the MCA, his treatment notes indicate that Mileski is doing well; he denies significant problems with mood, sleep, or appetite; and his insight and judgment are intact.  Dr. Welsh indicated Mileski's bipolar disorder, opiate dependence, and polysubstance dependence are all in remission.  He is planning to try to reduce Mileski's medications at his next appointment; and he assigned  Mileski a GAF score of 65.  (Tr. 485-486)

The ALJ found that the foregoing  treatment notes are inconsistent with, or contradict the severe limitations included in Dr. Welsh's MCA.  This finding is supported by substantial evidence.

Moreover, the ALJ's decision to reject these severe limitations is supported by additional evidence in the record.  Dr. Schweid testified that Mileski's ability to complete a  normal workday and workweek depends upon the stress level of the job.  Dr. Schweid opined that If the job is routine and simple, and includes the limitations in the RFC, then  Mileski has a fair chance of completing a normal workday and workweek. (Tr. 665-666) Dr. Schweid also opined that Mileski could handle routine supervision, but not high pressure supervision.  (Tr. 665)

Dr. Sipps opined that Mileski is only mildly impaired with respect to directing his attention to the task at hand for a reasonable time; dealing effectively with the public, coworkers, and supervisors; and understanding simple directions.  (Tr. 392-393)

20

Drs. McCreary and Winters opined that Mileski was able to follow instructions, complete tasks, and interact fairly well.  (Tr. 408) They further opined that Mileski is only moderately limited in his ability complete a normal workday or workweek, and has no marked limitations.  (Tr. 406, 409-410)

These opinions are inconsistent with, or contradict, the extreme limitations set forth by Dr. Welsh, and support the ALJ's decision to disregard portions of Dr. Welsh's opinion.[9]

### B.    Vocational Expert Testimony Supports the ALJ's Finding

A VE's testimony must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments.  *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)  Mileski claims  that the hypothetical posed to the VE is incomplete because it does not include a limitation that Mileski is unable to complete a normal workday or workweek.   Mileski further argues that when this limitation was included, the VE opined that Mileski is disabled.  While this may be true, it is nevertheless irrelevant.  As discussed above, the ALJ properly excluded this limitation from his hypothetical question.  Accordingly, the hypothetical question posed to the VE was not incomplete, but accurately portrayed Miseski's impairments; and the VE's testimony based thereon supports the ALJ's finding that

---

[9] The only evidence that arguably supports Dr. Welsh's opinion regarding Miseski's ability to complete a workday is Dr. Leidal's opinion that Miseski's ability to complete a normal workday was below average to poor. (Tr. 508) The ALJ rejected this opinion because there was insufficient evidence to support the conclusion that his ability was poor, as opposed to below average, which the ALJ found might be supported by the evidence. Additionally, the ALJ found that Dr. Leidal contradicted himself by saying that Mileski probably could work with further assistance and treatment. (Tr. 26)

21

Mileski is not disabled.

### C.      Remand Under 42 U.S.C. § 405(g)(6)

The ALJ issued his decision on March 21, 2007.  Nine months later, on

December 18, 2007, Mileski was hospitalized due to psychosis and agitation.  (Tr. 539)

Mileski argues that this hospitalization is new and material evidence that warrants

remand.

42 U.S.C. § 405(g)(6) provides in part:

> The court may ... at any time order additional evidence to be taken before the
> Secretary, but only upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such evidence into the
> record in a prior proceeding[.]

Pursuant thereto, a court can remand a case for consideration of new evidence only

where there is a showing that the evidence is new and material and that there is good

cause for the failure to include the evidence in the prior proceeding.  *Casey v. Sec'y of*

*Health and  Human Servs.* 987 F.2d 1230, 1233 ( 6th Cir. 1993).  Evidence is

considered new if it was, "not in existence or available to the claimant at the time of the

administrative hearing."  *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  Evidence is

considered material when there is a reasonable probability that the ALJ would have

reached a different decision if the evidence had been presented.  *Young v. Sec'y of*

*Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Sec'y of*

*Health and Human Servs.,* 865 F.2d 709, 711-712 (6th Cir. 1988).  The party seeking

remand must demonstrate good cause for failing to obtain the evidence prior to the

hearing.  *Cotton v. Sec'y of Health and Human Servs.,* 2 F.3d 692, 695 (6th Cir. 1993)

To demonstrate good cause the party seeking remand must provide a valid reason for

failing to obtain the evidence prior to hearing.  *Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986)  Finally, the party seeking the remand has the burden of demonstrating that the remand is appropriate.  *Willis v. Sec'y of Health and Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984)

Mileski's hospitalization is new; however, Mileski has failed to establish that it is material.  Mileski argues the  December 18, 2007 hospitalization is material because if the ALJ were aware that Mileski would continue to experience manic and psychotic breaks, it is likely his decision would have been different.  At the time the ALJ issued his decision,  Mileski had been hospitalized three times for reasons substantially similar to his December 18, 2007 hospitalization.  (Tr. 221, 235. 363)  Dr. McCreary opined that when hospitalized, Mileski recovers quickly, and does well when his medications are adjusted and/or monitored.  This is consistent with the treatment notes from Mileski's 2007 hospitalization which indicate that at the time of his hospitalization, Mileski had been chronically noncompliant with his medications; and, once his medications were properly administered, Mileski demonstrated appropriate behavior, intact judgment and insight, and stabilized sleep and appetite.  (Tr.557,591)  Thus, the 2007 hospitalization was consistent with Miseski's prior hospitalizations of which the ALJ was aware.   There is no evidence to suggest the ALJ assumed Mileski would not experience another psychotic or manic break requiring hospitalization, or that the ALJ would have reached a different conclusion had he been aware of an additional hospitalization.  Accordingly, Mileski has failed to establish that remand is appropriate.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: February 27, 2009

24